When you're ready, counsel. Thank you, Judge Fletcher. May it please the Court. Howard Goodfriend, representing the appellant Dwight Ingram, his mother Daphne, they were plaintiffs below. I'd like to reserve five minutes, we'll see how that goes. Washington's Lifestead Law imposes on school personnel a requirement that a player who and it prohibits the school from returning, allowing the player to return to play until the athlete has been cleared by a health care provider. After finding that D.J. Ingram sustained a head injury during a football game on September 10, 2011, and that's the District Court's finding of fact 42, the District Court misinterpreted the requirements of the law and committed clear error in concluding that the administrators and coaches responsible for the football program at Chief Leschi School were not negligent in administering the eligibility requirements or in monitoring the safety and health of D.J. Ingram. The government's raised a jurisdictional argument in their brief of appellee. I'll address it if the Court has any questions, but if not, I'd like to move directly to the merits of the argument. Well, let me just have you respond just a little bit because it seems to me that the claim I'm really looking at, and I appreciate that it's not very extensive, is that Mr. Ingram sustained a head impact and complained of a head pain in a high school football game and was immediately sent back in the game despite his complaints. He then sustained another head impact which resulted in permanent brain damage. All in the game. There's nothing in there about a notice of some concussion in a June 2011 spring practice. There's nothing in there about negligently failing to ensure he got a medical release. There's nothing really in there about failing to obtain concussion information or signed athletic book acknowledgement form. So then you'll leave me, if you will, to apply our precedent and try to come up to see if there's notice. It didn't seem to me Rooney applied because Rooney there was a fall mentioned in the complaint. There's no mention here about a problem in a spring football practice or anything about negligently failing to get a medical release or any of that stuff. Nothing is mentioned. So I looked at what we have here and I guess, what's your best case? Well, you accurately read the claim, Judge Smith. I would submit that Rooney actually does apply here. But Rooney, when I read Rooney, it seemed to me that what we said was the prior incident was mentioned. The fall was mentioned and therefore one could enlarge, if you will, the scope of the notice because the fall was right in the claim. That was the big deal in Rooney. So what's your best case? Well, I think if you look at the three relevant cases from this court's jurisprudence, I'm going to start with Blair v. IRS because it says that once the government waives its immunity, the scope of the waiver is construed to achieve its remedial purpose. It's construed not narrowly but broadly. And in Goodman, I think it was Judge Gould who wrote that case, the court stated the jurisdictional requirement is not extensive but requires only a general description of the time, place, and nature of the injury. This claim says that he sustained... This time is during the football game. This place is during the football game. This doesn't say anything about anything prior. That is where he sustained his injury. Prior? No, at the football game. And that was the nature of the claim, that he sustained a head injury at the football game and he was sent back in the football game despite complaints about it. Now the allegation of complaints are not temporal as to at that specific point in time. Much like Rooney, I think the mention of the fact that there was injury and complaints was sufficient to put the government on notice. And the mention of the Lystedt Law was sufficient to put the government on notice that the entirety of compliance with the law was at issue and that was the proximate cause of his injury here. And the newly raised jurisdictional argument, I think, should be rejected under this court's precedent. I understand your answer. The district court disregarded not only the spirit but also the letter of the law and the district standards in the Chief Leschi Handbook, which I think are substantively enforcing that law, which provide evidence of the standard of care under Washington law. It acknowledged but ignored the requirement that the handbook mandates an annual certification by a physician of the athlete's ability to participate in sports. The district court concluded at ER 101 that there is some ambiguity in the Chief Leschi Handbook but held that a physical, if conducted within two years of athletic play, would still be valid once a season is underway. I would submit... Now, in going forward in this, what is my standard or review for the district court's decision? Well, the district court's interpretation, I think, of the law and the handbook would be de novo because those are legal standards. I guess I'm trying to figure out why we're saying that's de novo when what we have here is a negligence case and what we have here is what you have to prove in negligence and now we're trying to determine whether, in fact, you proved it. Well, in terms of whether there's ambiguity in the handbook, I would submit that this court is in as good a position to interpret it as the district court. In terms of its findings of historical fact relating to negligence, I would agree with you 100%, Judge Smith. As to whether another physical needed to happen, that would be in de novo review, but after that it is, in fact, abuse of discretion? Well, it would be clear error. Here's where I think the district court got it wrong. There is no ambiguity. It is clear that the athlete must submit a physical exam prior to participation, but then the handbook is clear that prior to each subsequent year of participation, a student shall furnish a statement signed by a medical authority licensed to perform a physical exam which provides clearance for continued athletic participation. That was quoted in the district court's findings of eight. There's a distinction between a physical exam, which is good for two years, and then clearance signed by the physician in a subsequent year prior to competition. But really, to get to the clearance, one's got to have notice of an injury, right? I don't think so. Why do you need a clearance if you don't have notice of an injury? They have already on the books the physician release formed with the physical, if you will, to go ahead and play. If there is that on the books and you don't know about any injury prior to this, then I'm trying to figure out why you need anything more. Because the handbook says, it doesn't say anything about notice of injury. It says prior to each subsequent year of participation. So you don't need just a physical every year. Every year you've got to get another physical release form? You just need clearance signed by a physician. That's what it says. You don't have to submit the physical. You just have to have clearance. Now it is undisputed that DJ suffered an injury at football practice in the spring of 2014 and the district court so found. This requirement of continued clearance and follow-up becomes doubly important in this specific case. And that's where we get into clear error. Because it's undisputed that DJ suffered a concussion in the spring, the district court so found in finding of fact 15. It's undisputed that Coach Savini witnessed helmet-to-helmet contact at that time, the district court so found. It's undisputed that DJ did not return to practice after that injury suffered in June of 2011. That's finding of fact 22. And it's undisputed that he was never cleared to return to football before that first game in which he suffered this devastating injury in September 2011. That is not undisputed. Well, it's undisputed that he did not have a... It is not undisputed. In fact, Adams says, I wouldn't have handed P, your client, a yellow card and let him play without signed paperwork. The forms are just misplaced. What's undisputed is that the form's not in the file. That's all that's undisputed. Well, the medical records do not show that he did not come back. His doctor's notes show he did not come back. And I think what they were talking about was the signed acknowledgment of the Lystedt concussion notification by the athlete and by his mother. I think there was a dispute about whether that occurred. But in terms of a medical clearance to return to play after suffering the injury in June, there is none. Is there a finding of fact by the district judge with respect to that form, the clearance form? Well, what the district court found was all he needed was a medical exam on file that had been conducted within two years. And he did have one in October of 2009. So the district court interpreted these requirements of the law as not requiring. He said there was ambiguity and basically found that, resolved that ambiguity by saying, in contravention of the spirit and letter of the law, I think that there was no requirement that he needed to present anything else but that physical. If we were to agree with you, that is to say that the form, the clearance form is required in addition to the physical examination. I think that's what the handbook says. Well, OK. What if we were to agree with you that that's what the handbook says and that the form isn't there and send it back to the district judge? Because this was a bench trial, so we're not stuck with the problem of this. That's correct. Box of the jury verdict for a fact finding on that question. Well, what happens if the district judge says, well, if you ask me to find facts on that question and you're telling me as a matter of law that such a form had to have been signed and the district judge says, well, given the facts here, I find that that form never was signed, then what happens? Then I would submit that the district violated the law, was negligent, and the remaining issues would be causation and damages. And isn't this negligent per se? No. Well, actually, that issue now is before the Washington Supreme Court. They accepted review in that Division III case just on Tuesday about whether the Lystedt law itself creates a cause of action. But under Washington law, it would be evidence of negligence that could be considered by the trier effect. Well, the problem comes in that that could be evidence of negligence. We're back in front of the trial judge now on clear air. And I appreciate this is a tough injury. And I'm not trying to get away from that. I played football. I didn't go thereafter into my life not having played football. I know what the situation is. But I'm really looking at the standard of review. You haven't got a form there. But you got one who the district court seemed to believe. Adam's saying, I got the stuff. If I hadn't got the stuff, I wouldn't have given your client the card. I wouldn't have let him play. You got the coach saying, I got the card, which says in testimony that they have. I've got it. And we had it. It's just not here. And then all we have is a lack of paperwork. We've got emergency medical authorization form for 2010, 2011. We've got a concussional information sheet for 2010. We raise up again. Who signed it? But right there in the record, mother says, and it came to their sports. They gave it to me. I signed it. I think I think every time she says it doesn't matter. I sign everything. I think the distinction, your honor, is between the forms that are signed by the parent and player, which the district court found they had based on the mother's testimony and the coaches and the district's interpretation adopted by the judge. And Ms. Adams so testified that all we need is a medical exam that had been conducted within two years. That was what they were looking for. They were not looking for anything else, either clearance after. So then if I agree with the district court that they don't need any prior physical until October 2011, your case is over? If you so find, no. What you have to find is that the clause in the handbook that says prior to each subsequent year of participation, a student shall furnish a statement signed by a medical authority licensed to perform a physical exam which provides clearance for continued athletic participation is simply a nullity. And that's what the district interpreted. Well, I know that it's a nullity. That's what I'm trying to question you about. If, in fact, Adams and Savini both say, yeah, well, Savini said I wouldn't let him play without a card. Adams said I wouldn't have given him a card if I didn't have all that stuff. It's just not in the record. Well, I think, again, there's a distinction between the stuff being the concussion information form and the release signed by the parent and the medical clearance required by the Lystedt law. And that's what they didn't have. And that's what they didn't see. The problem I have with your question, that's why I'm putting it to you. When you're the district court and you're trying to sift through all this information and you're now the prior of fact, you haven't got a jury there helping you. You're the prior of fact, and you've got to determine who's telling the truth, who isn't, who you believe and who you don't. And you've got some paper that's not there, that should have been there. Then you have to decide, who do I believe? And at that point, I have to give clear error review to that decision. It seems to me that's what the district court did. Well, I'm low on time, but I'd like to respond to that. Yeah. Well, I wouldn't ask it if I didn't have a chance to let you respond. I don't have all the authority. We are talking about clear error. And clear error is, as you know, illogical, implausible, or conflicts with undisputed evidence. What is the undisputed evidence from the neutral folks in this case who did not have a stake in this action? The medical providers, DJ's doctor, it's undisputed he did not return after June 14th, and he did not give him any subsequent clearance after that. That's in the record. And then also, if you look at the subsequent medical providers, and here we're talking about the two impacts he suffered in the game. Each of them, each of them uniformly say that he, in the ambulance, in the ER, and subsequently when he was being treated, that he told the coaches he didn't feel well and he wanted out of the game. That's, that, that was the undisputed evidence from the third parties that had no, absolutely no incentive to testify one way or the other. All right. Excuse me. And the judge heard all that, right? And the judge rejected it. And you were there to present your argument, just like you're presenting to us, right? And the judge, after hearing it all, said, I don't agree. That's true. I'd like to ask a question, if Judge Fletcher could give you a little extra time. Oh, please, yeah, yeah. Is there any legal authority that says that in a case like this, or some other, that a district court can't make a finding of fact based on just the say-so of a particular witness, if, if documentary evidence isn't present in a file? I'm not aware of one, but I, I would simply rely on this court and the Supreme Court's definition of clear error, which doesn't require that the evidence be, that, that there's no evidence to support the district court's findings. Only that if the entire record is reviewed by this court and a definite and firm conviction that a mistake has been made, this court has and should reverse that finding. And that's what we're relying on here, based upon the, the undisputed documentary record that was before the district court. Okay. Why don't we hear from the other side? We have taken you over time. You'd sought to reserve time. We'll give you some time to respond. I appreciate that, Judge Fletcher. Good morning, Your Honors, and may it please the court. I'm Teal Miller on behalf of the United States. I want to start with what the Supreme Court has said about clear error in the context of witness testimony in Anderson against Bessemer City. And what it said is that when you have conflicting testimony from two witnesses, each of whom has told a plausible story, that finding can virtually never be clear error. And that's what we have in this case. The district court heard testimony from the coaches and from the player, and it accepted the coaches' testimony. Can I back up for just a minute and ask a different question? I don't dispute what you just said about Bessemer and Anderson. Did your side prepare the district court's finding of fact? No. No. So this is the district judge's own? I wasn't trial counselor, but there's no indication in the record I'm aware of that we prepared the findings of fact. This is the district court's finding. The reason I want to know that, I'm reading this very carefully, and I'm trying to figure out what the district judge had in his head as this was being written, what the district judge thought was the law. It's very clear that the district judge thought that it was the law that the physical examination had to be completed every two years. The district judge doesn't say anything about the authorization that has to be done every year under the handbook. The district court, about the concussion information form? Yeah. So what the district court found was, and this is finding number 10 at ER3, Coach Savini received a yellow card for the player before the Acosta game, and the prior part of that paragraph reviews the requirements for a yellow card, and they include the concussion release form. I'm sorry, you talk too fast for me. Say it again. I'm looking at finding number 10. Yeah, I'm reading it. The last sentence, Coach Savini received a yellow card for DI before the Acosta game, and then the prior sentences of that same finding describe what was required to get a yellow card, and they include... No, no, no, let me read that sentence to you. In fact, I'll read all of paragraph 10, so we make sure we're doing the whole thing here. Number 10, Audrey Adams was the athletic director for Chief Leschi for the school years 2010, 11, 2011, 12. She routinely checked the students' eligibility requirements every week during the season. She checks grades, physical exams, parental or caregiver authorizations to participate in a sport, and acknowledgement of the requirement of the Zachary Lysdat law. When the requirements are fulfilled, she issues a yellow card to the student to give the coach. Coach Savini received a yellow card for DI before the Acosta game. I don't see in that paragraph a separating out of the every two-year physical requirement from the every year medical authorization requirement. So I'm trying to figure out whether the district judge, as he makes his findings of fact, that the compliant things, these are complied with, those legal requirements are complied with, whether he had in mind the every year authorization, whether he misinterpreted the law, whether he was unaware of the law. I'm just trying to figure out what did he specifically find, and what is maybe ambiguous. The district court found that a player, in order to have medical authorization to play, a player had to have a physical within the past two years, and that finding was supported by the record. Right, I got that, but the argument we're hearing is, in addition, there had to be a medical authorization every year. The district court rejected that argument. It found the only medical authorization. Where did the district judge reject that argument? Well, by finding that he received a yellow card at listing these requirements. I read a paragraph about the yellow card, and I have to say on that question, it's just not mentioned. Well, your honor, if you look at page 166 of the record, which is Washington's athletic information handbook, it makes clear that a physical examination is good for two years. But that's not the argument about the physical examination. The argument is that there's a separate requirement of an authorization every year. I don't believe that plaintiff is making that argument. I think he's making two arguments. Well, I think that's the argument I just heard. He's making an argument that you have to have the life-dead form signed every year prior to participation, and he's making an argument that there is a physical examination requirement that is an every-year requirement, not an every-two-year requirement. As I understand it, and he can clarify, he is not making an argument that there are two separate physical examination requirements. So the question before the court... I may or may not end up agreeing with the argument, but here's the argument I heard. The argument I heard is that the Life-Dead Act requires a physical examination every two years, and it requires medical authorization every year. And, of course, every other year in between the two-year physical examinations, all it needs is the doctor to sign it. Doctor doesn't need to do an examination. That's the argument. Now, do you... I understand the argument differently. Do you disagree with that? Or I don't care whether you agree that that's the argument that was made. I want to know, do you disagree with the argument that there is an authorization form required every year signed by a doctor? Yes, I do. I disagree that the Zachary Lifestead Law imposes a requirement that a doctor authorize a player to play every year. And I don't believe... I do not believe that counsel made that argument below plaintiff's counsel. I believe that they argued that the physical examination requirement was an annual requirement, and the Zachary Lifestead Law required the player and his parent to sign. They're making an argument separately based on the facts in this case that this player was required to have medical clearance because of his injury in June of 2011. But they are not... And that's a Zachary Lifestead Law argument. They are not arguing that players every year had to have medical authorization under the Zachary Lifestead Law. Were you a trial attorney? I was not. So, I do not understand them... The basis for understanding what arguments were made at trial was reading the transcript? Correct. Well, and as I understand it, as Judge Fletcher was reading, there is, just prior to paragraph 9 and paragraph 10, the handbook also states that student-athletes requiring the attention of a physician due to illness and or injury must have a physician's written release prior to returning to practice or competition. Absolutely. That would suggest that if, in fact, one would have known about his injury in June of 2011, there would have had to have some release. But if one doesn't know, then there need not be a release, correct? That is exactly right, Judge Smith. And I think maybe the source of confusion here is they argued he had to have medical clearance before he played in the fall of 2011. They based that argument on the Lifestead Law and the June of 2011 concussion, not on the school handbook. Just so I'm clear, that's how I understand their argument. Counsel can disagree with me if I'm wrong. The reason they're wrong, that he had to have medical clearance in the fall of 2011, is based on the District Court's finding number 30. Coach Savini denies that he witnessed or was told of the effects of the head injury suffered by DI on June 13, 2011. That's the June 2011 head injury, which they say triggered the physical clearance requirement. And Coach Savini denies that he knew that DI had a doctor's appointment concerning a head injury. The coaches didn't know he had a head injury. The District Court accepted that testimony. It found that they didn't know he had a head injury. And for that reason, they didn't need to have medical clearance for him in order for him to have a yellow card to play. And the District Court made that finding, and that finding was not clearly erroneous. I'd be happy to address the exhaustion argument. I think there are two cases which are admittedly out of circuit. But there are two cases which show why the plaintiff has not exhausted the claims insofar as they depend on the June 2011 injury and the forms. The first is the Mora case out of the Third Circuit where the defendant said, I was injured by instructions I was given while fighting a fire about how to handle his breathing apparatus. And then he went to trial and he tried to show that the United States was contributorily negligent in starting the fire. And the court said, starting the fire is a separate set of facts. Even though it was all one fire, the injury currently took place during the fire. This is quite similar to that. But really, I appreciate your out-of-circuit precedent. But we have a judge sitting right here who wrote in circuit precedent, which I'm really trying to interpret to determine this. If I look at this, it seems to me like Shippeck says, so long as the agency was on notice of the injury, any discussion of the legal theory of liability for that injury of the administrative claim is gratuitous or surplusage. Now, how do I apply that here? Well, the notice requirement is to give the agency the opportunity to investigate. And here, the claim that was presented alerted the agency that it should investigate what happened at this football game. They had notice of the injury in the football game? Yes. Why would that limit the claim as to any facts that are pertinent? They didn't have notice that he also had a concussion four months earlier. And so they didn't have any reason to, for example, preserve forms or investigate what might have happened in terms of clearing him to play. The exhaustion requirement is intended to give the United States an opportunity to investigate. Yes. It doesn't require that the United States actually investigate. Did the United States actually investigate? I don't think the record reflects that. I suspect they did not because I don't see anything in here that says they investigated. Well, there are, there is, let me back up a little bit. There is some testimony. One of the depositions, I believe it's Orlando Castilla, but it might be Audrey Abrams, talks about how they were told at some point, go get your files and look at them. Go get the file for Ingram and look at it. There was perhaps some investigation. I should have thought that a competent investigation, certainly in a lawyerly investigation, would not only look at what happened in the football game, but would start looking at authorization forms. Well, that's right. My response. The problem that we're talking about would have turned up immediately. Possibly, but even if it had turned up immediately, it was still months after the fact. And I think that that's the question. What I'm after is whether or not the notice that the government was given, that is to say that there was an injury in the football games that is at least alleged to have caused the stroke. In investigating that, what would the investigation have turned up? Because, okay, they've got an injury alleged to have been in violation of this act, and now they're trying to figure out, okay, what's going on. It would have to be a pretty slapdash investigation not to look to see whether there are any authorization forms in the school's files. That might be right, but I don't think it would be true that an agency or the high school would have been alerted. Well, we should look and see whether this particular player, there's any record of his being injured before. And that's the real thing that wasn't exhausted is the June of 2011 injury. Well, I should have thought that in a proper investigation, even a minimally adequate investigation, would have included an interview with the student who'd been injured. I don't think there's any record of that here. No, I understand that. And I'm not, this is kind of independent of what investigation might or might not have occurred. I'm trying to figure out what would have been a normally competent investigation if the government is on notice that he was injured during a football game. I think it would be to look at the events of the football game here. They went out and got video of the football game eventually. Included an interview with the kid who was injured? Possibly. I don't know how common it is to interview a plaintiff. Plaintiffs might well be reluctant to talk to government agencies when they're considering a lawsuit. I want to make two other quick points. There is one other point I want to make about that. It seems like we get this a little late. I mean, if in fact the whole reason for this is the notice and the opportunity to investigate, we've already had a trial. Your Honor, we did note... Government already had the chance to go in and do all the investigation it wanted, put all the L visits it wanted, do everything it wanted at the trial. And now it's coming in here and telling me that, oh, we didn't get enough notice. That's the worst. Now, I understand. I mean, I've looked at the standard of review. I know exactly what I'm up against. I mean, it's jurisdictional and it's there, and I've got to make that decision. But it seems to me in this particular case, it's a make-quick argument because you've already had a trial. You had to put on all the evidence you could come up with. You couldn't put on all the investigation you wanted. Why are you putting this to me now? Because it's jurisdictional. And because in my view, it's correct. I understand that I haven't satisfied you. I will note that we put it in the trial brief before the district court. The district court did not reach it. I don't know whether it was argued at closing. I want to make two points about the merits. So you don't know whether it was argued at closing? I don't. Is that because there's no transcript? I have not seen it. I don't think a transcript has been produced. I do know it was in the trial brief. So when you told me something else based on the transcripts, your reading of the transcripts, how many transcripts did you read? The entire trial transcript, the transcript of closing, I believe, has not been produced. But the entire transcript is actually in the supplemental excerpts of record. Yes, yes. And I have read that. Okay. So the two quick points. One, Judge Gould, you asked whether there's any case that stands for the proposition that we can't prove the existence of a form through testimony. I'm not aware that we can't. And the normal rules of evidence allow us to do what we did here, which is to have multiple witnesses testify that they believe that these forms existed and that he wouldn't have been allowed to play without them. That's the first point I want to make. The second point I want to make is, if the requirement is that you have a physical every two years, the physical here was October of 2009. So if the school was faulty as to this requirement, that means he had to have a physical as of October 2010, which means they can't show causation because he would have had that. I slipped a cog. Say that again. So the requirement they're saying was not met, was that he, one of their contentions is that he shouldn't have been allowed to begin to play football in the fall of 2011 because he had a physical from October 2009, which would have expired during the season. If they're right that that physical was only good for a year, which is one of the arguments they've made, it expired. We don't need the argument anymore. Okay. Well, it's an argument that doesn't show causation. And I'll just end on the district court found they had the burden to prove causation and they had not met that burden, which is an independent reason to affirm the judgment of the district court. Well, the district court didn't reach that argument. It did. It made a finding that they had not proved causation. Thank you, your honors. Now we've taken you over time. Let's put two minutes on the clock. I appreciate that. Let me be brief. The theories of liability relating to the clearance, finding of fact eight. The district court quotes the chief Leschi guidelines and the WIAA guidelines from which they emanate. And it basically says, and he quotes it verbatim, prior to each subsequent year of participation, the student shall furnish a statement signed by medical authority, license form, physical exam, which provides clearance for continued participation. So there's two things going on here. One is an exam for two years, and that's what he finds. And the other is clearance on an annual basis. The court in finding of fact 11 indicates that there's some ambiguity in the handbook about the requirement, but finds that the requirement for clearance is basically supersedition and irrelevant. And all that is needed is that two-year valid medical exam. There is, so there was no clearance for fall of 2011. There is also a requirement that if you suspect a person has been sustaining a head injury and they've been treated, they need clearance by a medical physician to return to play. This, unlike the first basis, which involves a straightforward interpretation of the legal standards, this argument is based on the clearly erroneous standard. Because the district court's finding that Coach Savini was unaware of a head injury of June 2014 cannot be sustained on this record for these reasons. The district court found that DJ sustained a concussion. The district court found in finding of fact 16 that Coach Savini witnessed head-to-head contact. The district court found that he did not return to practice in June 2011 in finding of fact 22. And the district court found that Coach Savini was unaware, but it's undisputed that DJ didn't just magically appear at the doctor's office. He was directed to go there by his mother who got a call and made an appointment. And she got a call. You know, you're reciting the evidence, all of which went to the district judge. That's true. But in terms of the legal standards, I think this court should look at it and say that the district court made a legal error in interpreting those standards. Thank you. Thank you. The case of Ingram v. United States is now submitted. Thank you both for your arguments. And the last case on the argument calendar this morning is Spokane Law Enforcement Federal Credit Union v. Barker.
judges: W. Fletcher, Gould, N.R. Smith